Okay, Mr. Bentley. Good morning, Your Honors, and may it please the Court. The First Amendment requires that a ban on commercial speech be a last, not a first, resort of government regulators. The State of Mississippi has imposed a complete ban on tire engineers' use of its trade name and federally registered service mark, and it has done so without any proof that the consuming public has actually been harmed by the use of the name and mark, and without any explanation as to why a less restrictive means of addressing the State's interests would not suffice in this case. Mr. Bentley, the Board doesn't reflect a single person who was misled in any way. That's correct, Your Honor. The Board's representative, the Board President, Dennis actual consumer complaining that he or she was misled by the name and the mark. The District Court's decision should be reversed for three reasons. First, this name and mark of tire engineers is not deceptive speech. It's not inherently, actually, or potentially misleading, because a consumer that encounters the mark in context understands that it's branding automotive services, not advertising professional engineering services. And second, even if the speech could be deemed potentially misleading, the ban still fails First Amendment scrutiny because the State has a less restrictive means of addressing its interests, which is a point of sale disclaimer. And third, at the very least, this case should be remanded for a trial because disputed facts prohibit affirmance on summary judgment of the State's total speech ban. Turning to the inherently misleading analysis, the tire engineer's mark and name is not inherently misleading because it is capable of being perceived by consumers in a non-deceptive manner. The inherently misleading analysis has two important factors. First, it assumes a reasonable consumer exercising some judgment when encountering speech. Second, it's an all-or-nothing inquiry. If the speech can be perceived in a non-deceptive manner, then it is not inherently misleading. Here, the name and mark can certainly be perceived and are perceived in a non-misleading manner when consumers encounter them at an automotive services website detailing automotive services, not professional engineering services, or at an automotive services shop. The Joe Conte, Toyota, this Court's decision from 1994 is, I think, the best description of inherently misleading speech, speech that is calculated to deceive and has no purpose other than to mislead or confuse a consumer. That certainly cannot be said about a federally registered service mark that is used to brand automotive services and that is not confusing when encountered at the point of sale. The State's argument on this point, the inherently misleading point, is that the term tire engineer has a single fixed meaning in the public's mind, that it means only a professional engineer performing professional engineering services in the automotive industry. That's simply not correct. If you look at the dictionary definition of engineer, it connotes something that is skillfully or artfully done, not necessarily something that requires a professional license. And if you look at the cases we've cited in our brief, particularly the IBM case out of North Carolina and the Earth Resources case out of Missouri, those courts recognize that the term engineer has widespread use that does not relate to professional engineering and, in fact, is used to refer to someone involved in repair and maintenance. So the consuming public does not always understand the term tire engineer to mean only a professional engineer. Second, the speech isn't actually misleading because, as Judge Smith, you asked me at the beginning, there's no proof that any consumer has actually been misled and that is required under this Court's precedence. What the Board relies on is a poll showing without any context, we say, that some consumers might be confused if they encounter by the trade name or service mark. But polling data is not sufficient to demonstrate that something is actually misleading. This Court's precedence, particularly Byron v. Landreth, Public Citizen v. Louisiana, Attorney Disciplinary Committee, have all analyzed polling data in the context of potentially misleading speech, never in the context of actually misleading speech. So, turning to the potentially misleading speech, we do not think that the Board's proof satisfies its heavy burden to demonstrate that the tire engineer's name and mark is even potentially misleading. And that's for three reasons. If you look at the poll, first of all, the poll is a post hoc rationalization for a speech ban that was imposed without, so far as we can tell, from the record, without any deliberation or rationale. The poll was commissioned after this litigation was ensued in an attempt to justify a speech ban that had already been imposed by regulators. And when you, what courts have said, when you use post hoc justifications for speech bans, you circumvent the Court's ability to understand what the regulator was thinking, what the concerns on speech the regulator made, and you substitute post hoc rationales for speech bans. There's two other reasons that the poll doesn't get the State over its burden. First, the poll, it's undisputed that the poll did not present consumers with the context of the mark, which is critically important when you're banning a service mark in all contexts. You have to show consumers the mark or at least explain to them in careful detail where they would encounter the mark. And third, the poll did not provide respondents with the State's definition of practice of engineering or professional engineering. This Court in Byron v. Landreth considered a poll that failed to provide respondents what the State's definition of a licensed interior designer was. And the Court said because the respondents did not have that information, the poll had no probative value. The same is true here. The poll doesn't get the State over its potentially misleading burden, which is a heavy burden, and especially when you consider the poll in relation to the other evidence in this record, particularly the eight other State engineering boards that have looked at this name and mark and determined that there really is no potential confusion in consumers who are seeking automotive services when they encounter the mark. They would not, the reasonable consumer, would not expect that they're receiving professional engineering services at an automotive service shop. But to be fair, do I understand correctly, those other States do regulate, they just don't ban? That's correct. They regulate. In other words, they do find it potentially misleading. They just have a different solution than Mississippi does. Well that's correct only in one instance, Your Honor, in Texas. There are eight States who have said there's no potential confusion at all. Texas, a ninth State, has said if there is any confusion, it's potentially misleading speech, and we'll address it with the disclaimer which Tire Engineers has voluntarily placed at its store so that if any customer were to arrive at a store believing that he or she was going to receive professional engineering services, they would see a disclaimer immediately that no such services are provided. I'm sorry, pardon my ignorance. Only one State requires disclaimers? The other States don't require anything at all? That's correct. The other States have said this simply does not fall under our regulatory purview because we do not see any basis to believe that you're offering to practice engineering. So they've said the mark and name can be used without any speech restrictions. So is your position, let's say Mississippi switched its rule and imposed disclaimers instead of a ban on the use of the mark, are you going to be back here to challenge a disclaimer or do you think that's okay? No, Your Honor. Tire Engineers would accept a disclaimer, a point of sale disclaimer in Texas. So that leads me to my last point that even If our court imposed a point of sale disclaimer, your client accepts that. There's no dispute about that. There would not be, Your Honor, and I don't think this court has to actually impose it. I think if you look at the cases I'm not saying we have to, but I'm saying if we decided to do that, your client would accept that ruling. That's correct. We would accept a point of sale disclaimer. We have no difficulty accepting that and have implemented it effectively in Texas. So that sort of rounds out my last point that even if the speech could be deemed potentially misleading, the state has a less restrictive means of addressing this, which is a point of sale disclaimer. The state has offered no reason, so far as the record shows, why a point of sale disclaimer would not satisfy its interest here. The state of Texas has found that it would satisfy its concerns. The district court decision did not explain or address why a less restrictive means, such as a disclaimer, would not be effective here. And if you look at the case law, I think what this court, to go back to your question, Judge Barstow, what the courts do in that case when they identify less restrictive means of addressing the speech, they discuss them in the opinion, they reverse and render because those means are available to the state. The court doesn't necessarily pick one, but it says we've identified at least one, and the state could do this without imposing a complete ban on speech, which again is a last resort, not a first. So unless there are further questions by the court, I think we would request that the court make a decision and, of course, leave open to the state if they want to attempt a, or if they want to request a disclaimer, tire engineers would certainly agree to that. All right. Thank you, Mr. Bentley. You save time for rebuttal. Mr. Pizzetto. Just one second. That wasn't my question. It wasn't whether the state wanted you to do that. My question was if, for example, this court should reverse and render, but with the provision that a disclaimer had to be included, your client is agreeable to that? Yes, Judge Barstow, we are agreeable to that. Thank you. Okay, Mr. Pizzetto. Good morning, Your Honors, and may it please the Court, I'm going to Why wouldn't a disclaimer resolve this, Mr. Pizzetto? Your Honor, I think, first, it would not resolve it because I think this is more along the lines of the case, the public citizen case, where instead of a disclaimer, they just banned the misleading nicknames. And I get to this, and the public citizen was a decision by this circuit. I think the difference is the disclaimer is effectively saying we are tire engineers, but we're not tire engineers, that the disclaimer is not going to carry the same equal weight as the name. If this was a faith healer, Your Honor, and they advertised themselves as faith healer, medical doctor, the court wouldn't say, state, you can't prohibit them from using the term medical doctor. The court wouldn't say you just have to make sure that they exclaim we're actually not a medical doctor. But it's such a contradictory position to advertise yourself as a tire engineer and then say, but we're going to put on the door when you get there some disclaimer that says we're not actually a tire engineer. What if they had called themselves tire doctors? I think, Your Honor, that would be permissible under the Constitution because I don't What would be permissible? It would be permissible to call themselves tire doctors because I don't think that is misleading. That's not actually — wouldn't be actually misleading. It wouldn't be inherently misleading because no one is going to think that they are a doctor working on tires. I think, Your Honor, I think the way to resolve this case, the clearest way, is actually on the actual misleading, because I think it is really a summary judgment issue, that there's competent evidence from the survey that the consumers are misled and there's no countervailing evidence. And that's the point I want to focus on. Do you have evidence of an actual buying one of their clients being misled, or is this just based on this telephone poll? It's based on the survey, Your Honor, but it's important to recognize that survey of 400 statewide Mississippians is the same consumer group that Tire Engineers provides their services and goods to. In other words, we surveyed Mississippi citizens who are over the age of 18 and who own or lease cars. Those are the same people, the exact same people that Tire Engineers does its business with. Well, this was a telephone survey, right? It was, Your Honor. So they didn't walk into the store. They don't see the trade dress. As I understand your opposing counsel's position, you essentially go to one of these locations and it looks like a jiffy loop. It does not look like an engineering institution. I think that's not actually — not accurate, Your Honor. I would say this way. In the record, I believe it's page 924, is the actual picture. This came up during the Daubert argument, where they said surveys should be thrown out because you didn't show them the trademark. And they introduced to the Court the picture at 924. It is a blue building. It has bays. The only visible writing you can see is the words Tire Engineers. That's it. There's no other writing on the outside of the building whatsoever. So it's not all of these sort of, you would say, functional disclaimers about it's really not a tire shop. Here's why, though — Why would a — and again, I'm not sure we have any proof on this, but to just use your analogy of if they said they were tire doctors, it's okay. Is there anything in the record about why the average consumer, when they see the term tire engineer, thinks that someone working on their — changing their tire or putting a new tire on their car would actually have an engineering license, would be akin to someone working for Goodyear in Akron, Ohio? Yes, sir. I think there is evidence in the record, and I would say it two ways. I think that the evidence would be — I don't think we'd have to establish that they think that the person that's changing their tire is an engineer, but that tire engineers are somewhere involved in the supervision or the process. And the reason why I think the evidence we've got about that and what consumers believe is both the survey, and I'll talk about that a little bit more in a second, but also that it's consistent with every other use of the term tire engineers. In the record, it is undisputed that tire engineers, engineers who work with tires, exist. And it's also undisputed that every other time the phrase tire engineers has been referenced to the public as far as anyone can ever see, from media, from courts, from consumer reports, everybody uses the phrase tire engineers to mean engineers who work with tires. If I was at a party last night and somebody said, Mr. Pezet, what do you do for a living? And I said, I'm a tire engineer, everyone would say, okay, I understand what that is. But then to hone in on your question, Judge Barksdale, is, but wait, doesn't this change when they show up at a tire shop and they go, oh, wait, you're not a tire engineer? I don't think it does, because what we show in the evidence is tire engineers, their relationship to the public through the media, what they do is they're often asked about tire selection. They are experts on which tires go with what cars. And they also do safety issues. They're interviewed all the time for safety issues and they market tires. So that when somebody goes, though, and says, well, Mr. Pezet, you're a tire engineer, what do you do? And I say, I specialize in deciding the best tire for your car based on your driving habits and safety issues, like can the tire be repaired or does it need to be replaced? Someone would say, that makes sense. That sounds like specialized knowledge. Where is that in the record? The evidence, Your Honor, is there's two types of evidence I'm referencing. One is the extensive, and I believe it's 2002 in the record, through all of the media records that we have, I think it leads for 50 or 60 pages, of all of the references to tire engineers in media, in courts, in Congress, in consumer reports, websites, are all to actual engineers. Including, Your Honor, in the record is the website of a tire engineer. www.tireengineer.com is an actual tire engineer. www.tireengineers.com is plaintiffs' use of the term. And I think what was agreed to before the district court, and I've not heard anything contrary, is that tire engineers cannot come up with a single example, except for their use, of the phrase tire engineer, that doesn't refer to an actual engineer who works or has specialized knowledge with tires. So I think, Your Honor, to get to your point of how is this actual misleading, and in remembering this, if the state establishes that it's actually misleading, it's not protected at all. It's banned, just like medical doctor or CPA. There's no disclaimer issue for actually misleading. It's actually misleading because of the survey information and the general information we have about the use of the term. They're mutually reinforcing. The survey is critically important because it went after those particular individuals that receive services or would receive services from tire engineers, the same universe of folks. And while I understand Mr. Bentley's very good argument that says, but wait, what you really need are complaints, recognize this. It's not the law, and it's not what the law should be. If we are restricted to only acting if we get complaints, it means that, first of all, people would have to be misled. Second, that the people would have to know that they were misled. They would have to figure out, wait a minute, maybe they aren't engineers. Just to be clear, even your surveys, if I recall, it's 50%, 60%. It's not anywhere close to 100% of people reporting in that somewhat sterile survey. That is correct, Your Honor. Doesn't that suggest that it may support your potentially misleading theory? How do you get from there to actually or inherently? I think, Your Honor, the best I can see is— A lot of people are saying it's not misleading at all. Yes, Your Honor, take it fair. A lot of people aren't, a lot of people are. I think the best I've been able to see is language that says significant number of misleading folks. And I can't remember the name of the case that I thought that concept was in, but I have not been able to find a case that says it's got to be 50 plus 1 or whatever that is. But that's also very relevant to, though, the argument about if you can only act on physical complaints. Imagine this. They have a customer base of—well, let me say, if the board had 50 complaints of people who were misled about whether engineers were involved at all in those decisions, two, then found out that they were misled, three, identified the obscure state board of engineers to register a complaint. If I had 50 of those people who did this and I came to these higher engineers and said, I've got 50 complaints, they would say, Mr. Pezzetta, that's not statistically significant for our base. And those are one-off people. Those could be the crackpots, that they complain about everything. That's why, Your Honor, this Court and other courts have always said that survey evidence is actually the better evidence with respect to whether consumers are misled in the First Amendment context of commercial free speech because you can control for crackpots, if you would. What is the case you cite for the surveys in the absence of an actual consumer, surveys being enough to find no First Amendment protection at all? Your Honor, I cite a couple of them, starting with the Shearing Corp. and Procter & Gamble cases. And let me be clear about what those cases are. First, I don't think either party has identified a case that said you can or cannot use survey evidence in this particular type of litigation. The cases that they cite, the judges distinguish the surveys and say they don't raise level of actual for flaws that exist in the surveys. They're not measuring the right things. No one just said, wait, you can't use a survey at all, so we don't bother to analyze it. Now, I will say, though, I haven't found a case where the survey was what pushed it over the top for actual. So here's where I draw the analogy. Surveys are used routinely in commercial free speech cases under First Amendment and under central Hudson, which is what we're operating here, in commercial disputes all the time. Here's the best example I have, Your Honor. Thinking about— Nobody's saying you can't use surveys to set up a potentially misleading case. I'm asking what about an actual? That's a good point. Be more specific. That surveys are used to establish actual customer misleading. That's right. I think of it this way. Similar to the state law that allows us to bring an action to stop misleading commercial speech, there's a federal analog statute. It's the Lanham Act. The Lanham Act creates a—not only the government has an action, but it creates a private right of action for one business to sue another. The reason why the Lanham Act doesn't violate the First Amendment is the central Hudson analysis. When you go back and look at base Lanham Act cases, they will say central Hudson, false and misleading commercial speech is not protected by the First Amendment. That's why the Lanham Act can have a cause of action between one company for another. The best example case, Your Honor, I think to look at is the decision by this Court in Pizza Hut v. Papa John. In that case, Pizza Hut brought a false advertising claim, a false commercial speech claim against Papa John. And this Court talked about survey evidence. It said in order to prevail in a false advertising, false commercial speech claim, if you want just an injunction against Papa John's, Pizza Hut had to prove it was potentially misleading. Same language we're looking at here. But if Pizza Hut wanted damages from Papa John's, they had to prove that actual consumers were misled. Again, the same central Hudson analysis. And this Court in that case said there are two ways to establish actual misled consumers. One is complaints, but two is a survey. And its surveys are widely accepted to establish that consumers are actually misled. So I look at it this way. If survey evidence is good enough for Pizza Hut under a false claim, false speech act, to protect its bottom line, to get financial damages, to prove actually misled customers, if it's good enough for Pizza Hut, it's good enough for state regulators who are not seeking a damages action. We're seeking the same thing that the lower threshold was, and that is just to stop the use. Remind me. Doesn't a Lanham Act plaintiff, a private plaintiff, have to prove damages to their business? In other words, proof of actual consumers switching from one to the other, from the defendant to the plaintiff, from the plaintiff to the defendant. Your Honor. That's sort of like actual consumer evidence, isn't it? I think that's what they establish through. I think they do it through two ways, Your Honor, if I'm remembering it right, is they have to show actually misled consumers, and they do that through the surveys. And then I think there's probably a separate calculation that they'd have to go through for the damages. When you're talking about surveys, are they talking about surveys of their own consumers? No, sir. No, sir. That is just the generalized you do the survey. It's got to be constructed right. But it is not just a survey of those consumers. What they do is they do a survey of those with the customer base, the kind of people who would be buying Papa John's pizza, which is why we did the survey the way we did here. It's the people who are getting goods and services or the same people that they're offering their goods and services. But if a Lennon Act plaintiff can't prove that they lost a single sale, can they possibly recover? They may not be able to. They may get a $1 damage issue. But here's the point I think that's relevant is to even get to damages. If it's only potentially misleading, the private plaintiff only gets injunctive relief. But to get to that higher level, to be entitled to damages, you have to prove actually misled consumers, and you do that through surveys or through complaints. That's why this survey is so important. If you looked at the criticism in like the Sims case or in Sorrell and other cases where the courts criticized the surveys and said, no, it's not going to get you to actual, it's because the survey wasn't right. Like in the Cajun Boy pizza case we discussed, that survey didn't prove actual misled customers because it didn't survey the customers. That company only sold wholesale, and the survey was of retail people, and it didn't use the name of the business. So the court said, well, that may get you potential, but that's not getting you actual. You're not even surveying the right people. We surveyed the right people. And, Your Honors, we accurately described – I don't hear any honest debate about whether we accurately described what the company does. In the survey itself, the survey begins at the record at 8.03, and it includes, Your Honors, the actual script that was used for the survey. And in the script, we described tire engineers as a company that offers sales and services of tires and repairs of tires. We didn't say they were engineers. We described what it is that they did. And that's an accurate description. And so when we asked – there was 17 questions about whether or not a company that sells and services and repairs tires, and it uses the name tire engineers, do you think they have engineers somewhere involved? And we asked it from several levels between, you know, are they supervised by engineers? Is the work performed by engineers? And uniformly, Your Honor, those were in the 40s and 50s and 60s of people thinking engineers were involved. And that's where – that's what makes it actually misleading. For the use in this context, that term, tire engineers, when used for a particular business. And once that survey comes in – and I think the Court does a good job of explaining why any questions about, is it leading or those issues, are just going to wait. But let me cut to why I think summary judgment is still appropriate even in this context. Is because if that survey comes in, if it is entitled to any weight – or maybe say it this way. If a survey of Mississippi consumers is relevant at all to whether Mississippi consumers are misled by the name tire engineers, if it comes in at all, the Board is entitled to summary judgment because there is no counter evidence at all about consumer impressions from tire engineers. And this was important because there was a discussion in Dalbert in my motion to strike part of the affidavit. What do you make of the fact that other jurisdictions either see no problem or are content with a disclaimer? First, none of those other jurisdictions did surveys. Second, those other jurisdictions are a mess of issues. I think of it this way. Mississippi, Texas, North Carolina, South Carolina all said you could not use the term underneath their state law. Mississippi got sued. We did not settle. The district court agreed with us. Louisiana got sued. They settled for a disclaimer. So the court never decided. South Carolina and North Carolina came back and reversed their decisions a month later with not a very good explanation of any change of facts or so because I think they were threatened with the same lawsuit that had been filed against us. Well, but the fact is then that other states seem satisfied with the disclaimer. Why is that not sufficient to justify Mississippi's interest? I think two reasons. I think, Your Honor, I think it leads too much into those other states because I think some of those states changed their minds to avoid litigation. Secondly, I think at best you weigh those decisions to decide what was the rationale, what were they really looking at. Some of them, Your Honor, it's not clear what part of their state law they're looking at. Others, it's not clear whether the state law is the same. Well, forget about the other state laws. Why are you concerned about some people being misled? Admittedly not all, but a healthy percentage. Why not just tell each of these people it's not what you think it is? Tire Engineers is no different from Dr. Pepper. We're just using it for fun. They're not actual engineers. Why are we not done at that point? I think, Your Honor, that goes back, I think, to beginning questions. Would that alleviate – first of all, is it – if we prove it's actually misleading, there's no disclaimer issue. I think that gets to if it's just potentially misleading. And I think you'd look to the public citizen case. I'd say look to public citizen and Joe Conte in a way. There's a limitation to disclaimers, especially when the disclaimer is really an attempt to undermine or to counter what is the clear import of the name. If it was a Dr. Pepper, I think a disclaimer would work. But think about – the disclaimer here would be saying, Tire Engineers, we're not tire engineers. Not just we're not licensed engineers. The disclaimer would say there are no engineers involved at all in any process that we do. We have no connection whatsoever with licensed or unlicensed or any engineers. That's the level of kind of disclaimer. It would be like saying the medical doctor – the faith healer could call themselves a medical doctor as long as there was an asterisk when you walked into their office that said, you know, I'm really not a medical doctor. Disclaimers – the Joe Conte decision is interesting. Now, Joe Conte was inherently misleading. But in Joe Conte, there was a disclaimer that said, disclaimer, invoice is not what you think it is, basically. And to try to settle Joe Conte, that party proposed an even bigger disclaimer. But the court ultimately said, no, we just think invoice is inherently misleading. I think the term is inherently misleading, but I think more importantly it is a question of actually misleading. If the survey comes in and it has any weight, then this is a summary judgment issue where there just is no counter-survey evidence, there is no counter-discussion, no counter-measurement of Mississippi consumers. It's summary judgment record issues. Thank you, Your Honors. Thank you, Mr. Pizzetta. Mr. Bentley, you've saved time for rebuttal. Thank you, Your Honors. I want to start with the disclaimer point because I think we really are at best in a potentially misleading analysis. My friend, Mr. Pizzetta, said, think about if I introduced myself as I'm a tire engineer. But if he immediately after that says, but by the way, I'm not a licensed professional engineer, that immediately cures any confusion that the person might have. That's exactly what the disclaimer would do in this case if the court agrees or gives the State the benefit of the doubt. What does the disclaimer, again, what does the disclaimer in Texas say? The disclaimer in Texas, I think, I can't recall it off the top of my head to be frank, Judge Marcell, but it basically says we do not employ professional engineers or perform the practice of engineering. And that's on the front door of each establishment? I believe front door or the counter that you would go to to request automotive services. What do you make of the State's point that they have evidence that 50 percent of a fair sample is actually confused? I disagree with that. I think that at best is evidence that there is potential confusion. I think the State's own survey, Judge Ho, as you explored with — I think what they're saying is 50 percent are actually confused and 50 percent are not. Well, I think — Or they have evidence. Yeah. So what I would say if you look at the case law on surveys is that that is not actual confusion as Joe Conti or Peel explains it. It's a hypothetical person who has not actually gone to the store and requested services. So it's at best demonstrates there is a potential out there that some consumer might be confused. And I think that's clear from Piazza Seafood World v. Odom, which is a district court decision that was affirmed by this court, where there was survey evidence that showed Louisianans were confused. They thought that Cajun Boy indicated Louisiana products. And the court said even in that case, there were a majority of people that were confused. That's proof of potential — that's evidence of potentially misleading speech, not actually misleading. There is countervailing evidence. The other boards that have considered this exact point. And also, I think the poll itself demonstrates that there are people out there who are not confused. So unless you have some poll approaching 100 percent confusion, which I've never seen in any of the cases, you cannot use a poll to substitute for actual confusion. And it's addressed in our brief, but I do briefly want to say the argument that this court should divert to trademark infringement analysis rather than speech analysis is not correct. It's one thing to have a likelihood of confusion test in private litigation. It's another thing to be able to let a state ban speech based on a likelihood or a potential for confusion. The Supreme Court and this court have not permitted that. Well, but the First Amendment applies when the Federal Government establishes a private damages liability theory, right? Take libel. You're not saying the First Amendment doesn't apply in private litigation. No, I'm saying it does apply. It certainly applies, but the tests are different. The test for affirming a speech ban should be much more rigorous than a private litigation likelihood of confusion analysis in trademark law. Even if private litigation leads to an injunction? Yes, because in the likelihood of confusion analysis, the survey evidence comes in as one of seven factors. So you've already shown two marks that look exactly alike. And then the survey evidence simply shows that there are some consumers that might confuse them. But it's not a standalone piece of proof that you're coming into court and say the total speech ban is permissible simply because some consumers somewhere might be confused. All right. Thank you, Mr. Bailey. Thank you, Your Honors.